# Boardman *versus* Dean.

The presumption of the delivery of a deed, arising from the fact of its being recorded, is one that may be rebutted and destroyed by counter evidence.

The facts, that the consideration was not paid by the grantee, that he never had the actual possession of the deed, nor any knowledge of its existence, and that the grantor remained in possession for ten years afterwards claiming the land as his own, are sufficient to rebut the presumption of delivery, arising from the recording of a deed of bargain and sale; especially, as against one who is not a *bonâ fide* purchaser.

The payment of the consideration mentioned in a deed of bargain and sale, is necessary to transfer the use, and render the instrument operative.

ERROR to the Common Pleas of *Erie county*.

This was an ejectment by James D. Dean against William Boardman for 27 acres of land in Union township, Erie county.

Both parties claimed title under William Clark, who, on the 7th March 1832, was the undisputed owner of the land in controversy. On that day, William Clark and Anna his wife executed a deed of bargain and sale, purporting to convey the premises to their son, Jerry Clark, for the consideration of $400. This deed contained a receipt for the consideration, and was placed on record on the 2d May 1832, but by whom, did not appear.

William Clark continued in possession until the 5th January 1842, when he conveyed the premises in dispute to Orlando Pattee; who, on the 2d May 1854, sold and conveyed the same to James D. Dean, the plaintiff.

The defendant claimed title under a deed from Jerry Clark and Sophia his wife, for their interest in the premises, dated the 20th August 1853, and recorded on the 2d November in the same year.

On the trial, Jerry Clark was called as a witness by the plaintiff, and testified as follows:—

"The deed" (of 7th March 1832) "was never delivered to me; I never paid a dollar of the alleged consideration; I never had possession of the land, and never heard of the existence of any deed to me for it, till the defendant, in 1857, informed me of it. From 1832 to 1842, my father occupied the land as before, claiming it as his own, and I never claimed any title to it. In August

[Boardman v. Dean.]

1853, defendant, Boardman, came to my house, and said he understood that I was dissatisfied with the manner that he had went on that land; and that he was willing to allow me something to satisfy me—he had a yoke of three-year-old cattle which he said he would give me to sign to him my right in the land as an heir of William Clark. I told him I would do it, but thought I had no right to it. T. G. King, Esq., drew some kind of a deed, and I signed it. I understood it was to assign my interest as an heir; I thought I had none—I understood Boardman expected to get the other heirs to sign. Cattle worth about $40 to $45. A good title to the land worth about $500 to $600. Boardman made no mention, and gave no intimation of the existence of any deed from my father to me."

*Cross-examined.*—" I had worked for my father when a young man, and thought I ought to have a claim against him. I helped pay for the land to some extent; that is, I helped to saw lumber in my father's mill, and the proceeds of the lumber went to pay for the land. The saw logs were taken off my father's land, and father helped to get out the lumber. I was then a young unmarried man, and lived with my father as one of the family."

*Re-examined in chief.*—" When Boardman called on me to purchase my interest in the land, I told him I thought I had no interest in it—that I did not know of any; he made no reply. If I had supposed that I had a title to the land, I would not have sold it short of $600. The first that I heard of there being a deed to me for the land on record, was last fall (1857). This suit was expected to come on for trial. I was subpœnaed to attend as a witness. Boardman came to me, and said he understood that I was to be a witness, and he thought it best to inform me that there was a deed to me from my father to the land, in order that I might not be surprised when the deed came into court in evidence. He said he had known of its existence many years before. Boardman resided near my father many years prior and down to 1842, while he (father) was in possession of the land, improving and claiming it as his own."

The court below (DERRICKSON, J.), in answer to points presented by both parties, instructed the jury that, unless the deed of the 7th March 1832 was delivered to Jerry Clark, the defendant had shown no title; that the circumstances given in evidence were sufficient to rebut the presumption of delivery arising from the recording of the deed; and that, if the defendant obtained a conveyance of the land from Jerry Clark, *malâ fide*, in such case, a *bonâ fide* purchaser from William Clark would not be estopped from impeaching the deed of 1832, under which the defendant claimed.

To this instruction the defendant excepted; and a verdict and judgment having been rendered for the plaintiff, the defendant sued out this writ, and here assigned the same for error.

[Boardman *v.* Dean.]

*Grant*, for the plaintiff in error, cited Blight *v.* Schenck, 10 *Barr* 285; Rigler *v.* Cloud, 2 *Harris* 361; Mitchell *v.* Ryan, 3 *Ohio* (*N. S.*) 377; Church *v.* Gilman, 15 *Wend.* 656; Snider *v.* Lachenaw, 2 *Ired. Eq.* 360; Ellington *v.* Carrie, 5 *Id.* 21; Tate *v.* Tate, 1 *Dev. & Bat.* 26; Morrow *v.* Alexander, 2 *Ired.* 392.

*Babbitt*, for the defendant in error, cited Van Amringe *v.* Morton, 4 *Wh.* 387; Hannah *v.* Swarner, 8 *Watts* 9; Critchfield *v.* Critchfield, 12 *Harris* 100; Chess *v.* Chess, 1 *Penn. R.* 32; Juvenal *v.* Jackson, 2 *Harris* 519.

The opinion of the court was delivered by

STRONG, J.—It is unnecessary to notice in detail the several errors which have been assigned to this record. They all refer to the instruction given by the court to the jury respecting the effect of the alleged deed of March 7th 1832, from William Clark and wife to their son Jerry Clark. Whether that instrument could have any effect at all or not, depended upon the question whether it had been consummated by delivery. That is a question of fact, and it was submitted to the jury as such. Of this there is no complaint, but it is urged, that there was error in the instruction as to what constitutes a delivery. Doubtless, the recording of a deed is evidence of a delivery, or, more properly, it is evidence from which a delivery may be presumed; but still it affords only a ground for a presumption, a presumption of fact; it may be rebutted and destroyed by other evidence. In this case, the instrument had been recorded by some unknown agency in 1832. This was all the evidence there was of delivery. On the other hand, it was proved that possession of the land was never taken by the grantee; that the grantee continued in possession ten years after the date, and the recording of the deed, when he sold the land to one under whom the defendant in error claims; that Jerry Clark, the grantee, never had the deed actually delivered to him; that he had no knowledge of its existence until 1857, twenty-five years after its date; and that he never paid the consideration-money mentioned in it. The charge of the court was in effect that, if these facts were proved, together with *malâ fides* in Jerry Clark's vendee, they overcame the presumption of delivery arising from the unexplained recording of the deed, and imposed upon the plaintiff in error, who attempted to set it up as a valid instrument, the necessity of proving more than the mere record.

We think the instruction of the court below not open to exception. Actual delivery was directly disproved. It is true, that actual delivery is not in all cases necessary. It is sometimes said to be a question of intent, but it must be an intent to have the deed operate immediately; and an intent manifested by word or action. Here, the instrument itself shows that it was not the

intent of William Clark and wife that it should take effect, except upon the payment of the consideration. It was not a deed of gift, but one of bargain and sale, for the stipulated price of four hundred dollars. The payment of the consideration was necessary to transfer the use and make the instrument operative. But the proof was positive that the consideration was never paid. In this particular it differs from a deed of gift, or a release, of which the law will presume a delivery without proof of acceptance, and that, though the donee or releasee may not have known of the instrument. In such cases, his assent is inferred from the character of the writing, as beneficial to the donee or releasee. It is true, there is here a receipt acknowledging payment of the consideration, but this is of no account against the positive testimony of Jerry Clark that it never was paid. The case of the Lessee of Mitchell v. Ryan, 3 Ohio (N. S.) 337, upon which the plaintiff in error relies, differs from the present in several important particulars. In that case, the transaction was a gift, not a sale. The alleged donee was an absent minor, and there was positive proof that the donor directed the deed to be put upon record. All these facts are wanting in the case now before us. Nor is it to be overlooked, that Boardman cannot be regarded as a bonâ fide purchaser for value from the alleged grantee and without notice, as was the claimant under the deed in Blight v. Schenck, 10 Barr 285. The Court of Common Pleas held, in the present case, that the facts already recited rebutted the presumption of delivery arising from the recording of the deed, only, if added to them was the other fact, that Boardman, who claimed under Jerry Clark, was not a bonâ fide purchaser. Whether he was or not, was submitted to the jury, and their verdict established that he was not. It may well be, that stronger evidence is required to rebut the presumption of delivery when the deed is set up by a bonâ fide purchaser who has advanced his money upon the faith of it, than when it is set up by the grantee himself, or one who stands in his shoes. But where the grantee denies any delivery or payment of the consideration, where he negatives all possession under the deed, or knowledge of its existence, where the instrument is one that cannot operate without his assent and his action, it is not for another who has surreptitiously obtained a conveyance from the grantee to set up the deed as having been delivered, without more evidence of delivery than is furnished by the fact that it is found upon record.

We think, therefore, that the objections urged against the charge of the court are without substantial foundation.

The judgment is affirmed.